UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

JON REINMUTH,

                         Plaintiff,

v.                                      Case No. 3:19-cv-00539-REP

COUNTY OF HENRICO, VIRGINIA

COUNTY OF HENRICO BOARD OF SUPERVISORS,    DEMAND FOR JURY TRIAL

ALEC W. OUGHTON, in his individual and official
capacities as Fire Chief of the County of Henrico
Division of Fire,

TOM LABELLE, in his individual and official
capacities as Deputy Fire Chief of the County of
Henrico Division of Fire

JOHN WALLS, in his individual and official capacities
as Battalion Chief of the County of Henrico Division of
Fire

JOHN A. VITHOULKAS, in his individual and official
capacities as County Manager for County of Henrico

and

W. BRANDON HINTON,
in his individual and official capacities as Deputy
County Manager for County of Henrico,

                         Defendants.

## COMPLAINT

      Plaintiff Jon Reinmuth, a firefighter for 18-years for Defendant County of Henrico,

Virginia, respectfully moves for judgment against Defendants, jointly and severally, for

depriving Plaintiff of his right to free speech under the First Amendment of the United States Constitution.

## PRELIMINARY STATEMENT

1.     Plaintiff asserts Defendants terminated his employment because of comments he posted as a private citizen on Henrico County Public Schools' ("HCPS") Facebook page, regarding a photograph posted by HCPS in the aftermath of the May and June 2020 Monument Avenue protests and riots.

2.     The Monument Avenue protests and riots involved a mixture of lawful, peaceful demonstrations regarding racial justice, and unlawful activities, such as vandalism and looting.

3.     During the Monument Avenue protests and riots, the Robert E. Lee monument was spray painted with various phrases. Some of the graffiti advocated for racial justice, such as "Save Black Lives" and "BLM." Other graffiti was directed at police, such as "Fuck Cops," "Fuck Pigs," and "Cops Are Murderers." Other graffiti was directed at politicians, such as "Fuck Trump." Other graffiti was illegible acronyms, words, and general graffiti.

4.     The photograph posted by HCPS on its Facebook page depicted two young women dancing or posing on the vandalized Robert E. Lee monument. Apparently due to the amount of profanity in the graffiti covering the monument, most of the photograph was blurred out, making the existence of the graffiti readily apparent but its contents illegible. In the photo, the dancers appeared to be celebrating or taking credit for some of the graffiti. The appropriateness or inappropriateness of the school system's decision to post this photograph gave rise to a public debate in the comment section of the Facebook post.

5.     As part of that debate Plaintiff commented, "Disgraceful" and added, "Will they be posing with their new TVs as well?"

6.     Plaintiff made his comments as a critique of HCPS's decision to post a photograph that appeared to celebrate unlawful activity, such as vandalism and looting.

7.     Plaintiff also made his comments as a criticism of the photograph itself, as the photograph appeared to Plaintiff to advocate for young people engaging in illegal activity like vandalism and looting.

8.     Plaintiff's comments were an act of free speech on a matter of public concern protected by the First Amendment.

9.     Defendants terminated Plaintiff because of his comments.

10.     Defendants County of Henrico and/or Henrico County Board of Supervisors are liable because the decision to terminate Plaintiffs was reviewed, sanctioned, ratified, upheld, and therefore ultimately made through the decisions of a person or persons with final policymaking authority for personnel issues. Those persons are Defendant County Manager Vithoulkas and his designee, Defendant Deputy County Manager Hinton. Defendant Hinton, serving as Defendant Vithoulkas' official designee in Step 3 of the County's grievance procedure, reviewed, sanctioned, ratified, upheld, and therefore ultimately made the decision to terminate Plaintiff because of his comments.

11.     Individual Defendants Fire Chief Oughton, Deputy Fire Chief LaBelle, Battalion Chief Walls, Vithoulkas, and Hinton are each liable because each was a but-for and proximate cause of the decision to terminate Plaintiff.

12.     Plaintiff asserts the termination deprived him of his First Amendment rights. He brings this action pursuant to 42 U.S.C. § 1983 for damages caused by and equitable relief arising from  the deprivation of his First Amendment rights.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, as it is an action seeking redress under the laws and statutes of the United States, specifically 42 U.S.C. § 1983, for the deprivation of rights secured by the Constitution and the laws of the United States.

14.     Venue properly lies in the Eastern District of Virginia, Richmond Division, under 28 U.S.C. § 1391(b) and E.D. Va. Local Civ. Rule 3(B), as a substantial part of the events giving rise to this action occurred within this District, specifically Henrico County, Virginia.

## PARTIES

15.     Plaintiff Jon Reinmuth is an adult male. Prior to his termination, he worked nearly 18 years for Defendant County of Henrico Division of Fire as a Firefighter and Community Services Firefighter.

16.     Defendant County of Henrico, Virginia, is a governmental entity created and existing under the Constitution and laws of the Commonwealth of Virginia and a person that is a proper party defendant in an action for relief pursuant to 42 U.S.C. § 1983. In all respects relevant to this Complaint, Defendant County of Henrico acted under color of the law of the Commonwealth of Virginia.

17.     Defendant County of Henrico Board of Supervisors is the governing body of Henrico County, created and existing under the Constitution and laws of the Commonwealth of Virginia, and a person that is a proper party defendant in an action for relief pursuant to 42 U.S.C. § 1983. In all respects relevant to this Complaint, Defendant County of Henrico Board of Supervisors acted under color of the law of the Commonwealth of Virginia.

18.     Defendants County of Henrico and County of Henrico Board of Supervisors are herein referred to as "the County" or "Defendant County of Henrico."

19.     At all times relevant, Defendant Alec W. Oughton was Fire Chief of the County of Henrico Division of Fire. He is a proper party defendant pursuant to 42 U.S.C. § 1983. As Fire Chief, Defendant Oughton was the highest-ranking official in the Division of Fire. He is sued in his individual and official capacities. In all respects relevant to this Complaint, Defendant Oughton acted under color of the law of the Commonwealth of Virginia.

20.     At all times relevant, Defendant Tom LaBelle was Deputy Fire Chief of the County of Henrico Division of Fire. He is a proper party defendant pursuant to 42 U.S.C. § 1983. As Deputy Fire Chief, Defendant LaBelle was the second highest-ranking official in the Division of Fire. He is sued in his individual and official capacities. In all respects relevant to this Complaint, Defendant LaBelle acted under color of the law of the Commonwealth of Virginia.

21.     At all times relevant, Defendant John Walls was a Battalion Chief for the County of Henrico Division of Fire. He is a proper party defendant pursuant to 42 U.S.C. § 1983. As Battalion Chief, Defendant Walls had supervisory authority over Plaintiff, making Defendant Walls third in the Division of Fire's chain of command above Plaintiff and other firefighters in Plaintiff's battalion. Defendant Walls is sued in his individual and official capacities. In all respects relevant to this Complaint, Defendant Walls acted under color of the law of the Commonwealth of Virginia.

22.     At all times relevant, Defendant John A. Vithoulkas was County Manager for the County of Henrico. He is a proper party defendant pursuant to 42 U.S.C. § 1983. As County Manager, Defendant Vithoulkas was the highest-ranking official in County of Henrico. He is

sued in his individual and official capacities. In all respects relevant to this Complaint, Defendant Vithoulkas acted under color of law of the Commonwealth of Virginia.

23.     At all times relevant, Defendant W. Brandon Hinton was Deputy County Manager for the County of Henrico. He is a proper party defendant pursuant to 42 U.S.C. § 1983. As a Deputy County Manager, Defendant Hinton acted as an agent of County Manager Vithoulkas with respect to decisions regarding Plaintiff's employment described herein. Defendant Hinton is sued in his individual and official capacities. In all respects relevant to this Complaint, Defendant Hinton acted under color of law of the Commonwealth of Virginia.

24.     Plaintiff does not incorporate into the allegations of this Complaint the contents of any outside documents. Plaintiff references certain documents or news items only to provide general background information supporting the allegations in this Complaint. Any documents or news items or other items referenced in the Complaint should not be construed as altering or adding to the allegations in the Complaint. The only allegations in Plaintiff's Complaint are the allegations stated in Plaintiff's Complaint.

**FACTS**

A.     **Background**

25.     Plaintiff Reinmuth worked for Henrico County Division of Fire for nearly 18 years, from July 17, 2002 until June 11, 2020.

26.     For the last eight years of his employment, Plaintiff worked in the Public Safety Building on East Parham Road as a Community Services Firefighter.

27.     For each of the last eight years, Plaintiff received the highest possible ratings on his annual performance reviews. Those ratings came from five different supervisors.

28.     As a Community Services Firefighter, Plaintiff's duties entailed administering fire prevention, risk reduction, and safety programs in the community.

29.     Plaintiff's duties did not involve monitoring or responding to Henrico County Public Schools' social media activity.

30.     In late May 2020, following the tragic death of George Floyd, demonstrations broke out on and around Monument Avenue in the City of Richmond, Virginia.

31.     These demonstrations and protests involved both peaceful activism and unlawful actions.

32.     The unlawful activities included rioting, vandalism, and looting.

33.     For example, public monuments were spray-painted and vandalized, fires were set, and local businesses were broken into and looted.

34.     During the initial protests and riots on May 30-31, 2020, protesters tagged the Lee Monument on Monument Avenue within the City of Richmond with various phrases.

35.     Some of this graffiti advocated for racial justice, such as "Save Black Lives" and "BLM."

36.     Other graffiti was directed at police, such as "Fuck Cops," "Fuck Pigs," "Cops Are Murderers," and "ACAB" (stands for "All Cops Are Bastards").

37.     Some graffiti was directed at politicians, such as "Fuck Trump."

38.     Other graffiti was illegible acronyms, words, and general graffiti.

39.     Prior to the speech at issue in this case, Plaintiff had seen the defaced monument and knew some of what was actually written on it, including in particular the profane language directed at police officers.

**B.**     **Plaintiff's Protected First Amendment Speech**

40.     On June 6, 2020, a local television broadcaster, WRIC, published on its website a photograph of two young women dancing or posing on the defaced and vandalized Lee Monument.

41.     Because of the amount of profanity in the graffiti covering the monument, much of the version of the photograph posted by WRIC is blurred out.

42.     As a result of the blurring out of the graffiti and the positions of the dancers on the monument, none of the phrases spray painted on the monument can be read in the WRIC photograph. Only a few letters are visible, just behind the dancers.

43.     It is apparent from the WRIC photograph only that the monument has been vandalized, and that the two young women are dancing or posing on it in a celebratory manner. Here is a copy of the WRIC photograph:



44.     In the WRIC photograph, the dancers, through their poses, appear to be celebrating or taking credit for some of the blurred-out graffiti.

45.     On June 8, 2020, HCPS posted the WRIC photograph on its Facebook page. HCPS stated on the Facebook post that one of the individuals was a rising ninth grader in HCPS, and the other was her friend. HCPS quoted a parent as saying the photograph had "gone viral being posted and shared by social activists as well as many celebrities!"[1]

46.     HCPS's post of the photograph gave rise to a hearty debate in the comments section. The debate surrounding the post involved at least 137 comments.

47.     Some commenters praised HCPS's posting of the photograph, stating things like:

- "Good for Henrico County Public School to recognize the voice of these girls and their communities,"

- "I love seeing a symbol of oppression and hatred turned into an empowering, living symbol of rebirth and freedom,"

- "Thank you Henrico for standing on the right side of history 👏proud my kids go to school in the county," and so on.

48.     Other commenters criticized the photograph and/or HCPS's posting of the photograph, coming from a school system, for example commenting that it appeared to be

- "celebrating BAD BEHAVIOR,"

- a "celebration of defacing property,"

---

[1] Plaintiff does not incorporate into this Complaint the statements made in the Facebook post or in the various comments to the post or replies thereto. For pleading purposes, this Complaint takes no position as to the truth or falsity of the various assertions in the statements / comments / replies. The Facebook post and comments / replies are referenced here only to explain the public debate context in which Plaintiff made the First Amendment-protected speech at issue. Any statements / comments / replies that are argued to contradict any allegations of the Complaint are denied. The only allegations in Plaintiff's Complaint are the allegations specifically stated in Plaintiff's Complaint.

- suggesting "Clearly breaking laws is okay according to Henrico county,"

- not appropriate for a school posting ("I am baffled and disappointed that you would post this on a school site. Are you going to also post burnt bus pictures and looted buildings? This is not appropriate for a school posting,") and so on.

49.     In short, the comments involved a debate over the appropriateness or inappropriateness of (1) the photograph itself, which arguably gave the impression of approving young people engaging in illegal activity like vandalism, and (2) HCPS's decision, as a public school system, to post the photograph on its Facebook page in an approving way.

50.     Plaintiff interpreted the photograph as inappropriate because, due to the condition of the monument and the dancers' celebratory position on it, the photograph appeared to advocate for illegal activity associated with the riots.

51.     Plaintiff joined the debate using his private Facebook account and shared his perspective.

52.     Plaintiff commented, "Disgraceful" and added, "Will they be posing with their new TVs as well?"

53.     Plaintiff, through his comments, criticized the photograph for appearing to advocate for unlawful activity associated with the riots like vandalism and looting.

54.     Plaintiff, through his comments, criticized HCPS for posting the photograph.

55.     Plaintiff made his comments as a criticism of HCPS's decision to post and celebrate the photograph. He believed the post inappropriately endorsed unlawful activity associated with riots like vandalism and looting.

56.     Plaintiff also made his comments as a criticism of the photograph itself. The photograph appeared to Plaintiff to advocate for young people engaging in illegal activity like

vandalism and looting. This is because the young people in the photograph appeared to be celebrating or taking credit for some of the graffiti on the monument.

57. Many other citizens made comments similar to Plaintiff's, criticizing the photograph and/or HCPS's decision to post the photograph. Other citizens praised the photograph.

58. In making his comments, Plaintiff was participating in a debate among citizens about the appropriateness or inappropriateness of HCPS, a public school system, posting and praising a photograph of young people dancing on a vandalized public monument.

59. The debate over the appropriateness or inappropriateness of HCPS posting and praising the photograph is a matter of public concern.

60. In making his comments, Plaintiff was participating in a debate among citizens about the appropriateness or inappropriateness of the photograph of young people dancing on a vandalized monument.

61. The debate over the appropriateness or inappropriateness of the photograph is a matter of public concern.

62. Plaintiff's comments addressed a matter of public concern.

63. Plaintiff made the comments as a private citizen using his private Facebook account.

64. Plaintiff made the comments while off-duty.

65. Plaintiff did not use any facilities or property of the County in preparing or posting his comments.

66. Plaintiff did not make the comments pursuant to any of his official duties.

67.     In making the comments, Plaintiff was speaking as a private citizen on a matter of public concern.

68.     Plaintiff's comments were an exercise of free speech.

69.     Plaintiff's comments were an exercise of free expression.

70.     Plaintiff's comments were protected by the First Amendment.

**C.      Defendants' Termination of Plaintiff**

71.     No later than June 11, 2020, Defendant County Manager Vithoulkas and Defendant Fire Chief Oughton learned of Plaintiff's comments on the HCPS Facebook post.

72.     On June 11, 2020, Defendant Fire Chief Oughton and/or Defendant County Manager Vithoulkas, in consultation with the other individual Defendants, terminated Plaintiff because of his comments.

73.     Upon information and belief, when Defendants Vithoulkas and Oughton learned of Plaintiff's comments on the HCPS Facebook post, they instructed Defendant Battalion Chief Walls and Defendant Deputy Chief Labelle to investigate and interrogate Plaintiff about his comments.

74.     On June 11, 2020, Defendant Walls and Defendant Labelle interrogated Plaintiff about his comments.

75.     Upon information and belief, Defendant Oughton and/or Defendant Vithoulkas, after consulting with Defendant Walls and Defendant Labelle, decided to terminate Plaintiff because of the comments.

76.     After Defendant Labelle interrogated Plaintiff on June 11, Defendant Labelle left Plaintiff in the interrogation room, stating he was going to confer with the Fire Chief (Oughton), and returned a few minutes later.

12

77.     On June 11, 2020, upon returning to the interrogation room, Defendant Labelle told Plaintiff that he (Defendant Labelle) had recommended Plaintiff be terminated because of his comments, and that Defendant Fire Chief Oughton was terminating Plaintiff because of his comments. In making this statement, Defendant Labelle was acting as Defendant Oughton's and/or Defendant Vithoulkas' agent.

78.     Defendant LaBelle told Plaintiff that he was being terminated. Defendant LaBelle further told Plaintiff he could sign a "resignation" paper. At no point did Defendant Labelle or anyone else give Plaintiff the option of continuing his employment. Plaintiff was not given the option to continue his employment. Thus, although Plaintiff then signed a "resignation" paper, right there in the interrogation room with Defendant LaBelle, because he was not given an option to continue his employment, Plaintiff was terminated against his will. Plaintiff did not resign. He did not voluntarily leave his job. Plaintiff was deprived of any free choice that would have allowed him to continue his employment. Plaintiff's termination was involuntary.

79.     Defendants' termination of Plaintiff was an adverse employment action.

80.     The decision to terminate Plaintiff was initially made by Defendant Oughton and/or Defendant County Manager Vithoulkas, in consultation with other individual Defendants. As explained in greater detail below, Defendant Vithoulkas and his designee Defendant Deputy County Manger Hinton, ultimately made the termination decision by reviewing and ratifying Plaintiff's termination at Step 3 of the County's grievance procedure.

81.     Plaintiff subsequently requested that Defendant Oughton reconsider the termination decision and allow Plaintiff to continue his employment. On July 17, 2020, Defendant Oughton denied Plaintiff's request.

82.     Plaintiff subsequently requested that Defendant County Manager Vithoulkas reverse the termination decision and allow Plaintiff to continue his employment. On September 24, Defendant Deputy County Manager Hinton, acting as Defendant Vithoulkas's official designee, upheld and ratified Plaintiff's termination and denied Plaintiff's request.

83.     The final decision to terminate Plaintiff was therefore made by Defendant Vithoulkas through his designee Defendant Hinton.

84.     Through Defendants Vithoulkas and Hinton, the decision to terminate Plaintiff's employment was made by the person with final policy-making authority for the County and/or the County of Henrico Board of Supervisors on personnel matters and personnel policy.

**D.      Additional Facts Bearing on the County's Liability for the Constitutional Violation.**

85.     Defendant County of Henrico and/or County of Henrico Board of Supervisors is liable for the deprivations of Plaintiff's First Amendment rights through the decisions of a person or persons with final policymaking authority. Those persons are Defendant County Manager Vithoulkas and his designee, Defendant Deputy County Manager Hinton.

86.     Defendant Vithoulkas has final policymaking authority for Defendant County of Henrico with respect to personnel issues.

87.     Defendant County of Henrico and/or County of Henrico Board of Supervisors is therefore liable for deprivations of Constitutional rights that are made through the decisions of Defendant Vithoulkas and his designees with respect to personnel issues.

88.     Defendant County of Henrico has an established policy of providing a grievance procedure for employees who have been terminated, like Plaintiff, to challenge the termination and seek to keep their jobs.

89.     The grievance procedure is an official policy of the County.

14

90.     Plaintiff challenged his termination through the County grievance procedure.

91.     At Step 1 of the grievance procedure, Plaintiff asked for a meeting with his immediate supervisor, Captain Rick Chappell to discuss changing the termination decision. Chappell referred Plaintiff to Employee Relations Manager Bridget Cease. Ms. Cease did not change the termination decision.

92.     At Step 2 of the grievance procedure, Plaintiff filled out a form and met with his agency head, Defendant Fire Chief Oughton, asking Defendant Oughton to change the termination decision and allow Plaintiff to return to work. Defendant Oughton reviewed Plaintiff's comments on the Facebook post, discussed above, and made a determination that in Defendant Oughton's view, the decision to terminate Plaintiff's employment was appropriate.

93.     At Step 3 of the grievance procedure, Plaintiff submitted a form and requested a meeting with Defendant County Manager Vithoulkas, to ask Defendant Vithoulkas to change the termination decision and allow Plaintiff to return to work.

94.     Defendant Vithoulkas has final policymaking authority for Defendant County of Henrico with respect to personnel issues.

95.     Defendant Vithoulkas was also a final policymaking official for the County because under the County's grievance procedure he had the responsibility and authority to implement final locality policy with respect to a particular course of action – namely, Plaintiff's termination. Defendant Vithoulkas had the authority to change the termination decision and allow Plaintiff to return to work.

96.     Pursuant to the County's grievance procedure, Defendant Vithoulkas designated Defendant Deputy County Manager Hinton to decide the outcome of Plaintiff's challenge to his termination on behalf of the Defendant Vithoulkas and the County.

97.     As Defendant Vithoulkas' designee, Defendant Hinton exercised Defendant Vithoulkas' final policymaking authority for Defendant County of Henrico with respect to personnel issues, and in particular personnel issues relating to the termination of Plaintiff.

98.     As Defendant Vithoulkas' designee, Defendant Hinton was also a final policymaking official for the County because under the County's grievance procedure he had the responsibility and authority to implement final locality policy with respect to a particular course of action – namely, Plaintiff's termination. Defendant Hinton had the authority to change the termination decision and allow Plaintiff to return to work.

99.     At Step 3 of the grievance procedure, Defendant Hinton, alone or in consultation with Defendant Vithoulkas, reviewed Plaintiff's comments on the Facebook post and made the final decision for the County to terminate Plaintiff's employment.

100.    The outcome of the grievance procedure at Step 3 by Defendants Hinton and Vithoulkas represents official policy of the County.

101.    The decision to terminate Plaintiff was ultimately made by Defendant Vithoulkas and his designee Defendant Hinton.

102.    Defendant County Manger Vithoulkas has final policy-making authority for the County with respect to personnel issues. Vithoulkas delegated this authority to Hinton in making the decision to terminate Plaintiff.

103.    The decision to terminate Plaintiff was the result of official County policy.

104.    The specific policy or custom of County of Henrico and/or County of Henrico Board of Supervisors at issue was the termination of Plaintiff's employment because of his comments on the HCPS Facebook post.

105.     This policy and the fault for its creation are fairly attributed to Defendant County of Henrico because the decision to terminate Plaintiff was ultimately made by Defendants County Manager Vithoulkas and Deputy County Manager Hinton, who are the County's final policymaking officials with respect to personnel issues.

106.     The necessary affirmative link between this policy and the alleged violation of Plaintiff's First Amendment rights is shown by, inter alia, the fact that when Plaintiff made his comments on the HCPS Facebook post, he was speaking as a private citizen on a matter of public concern.

107.     The County is liable because the decision to uphold and sanction rather than overturn the termination decision and reinstate plaintiff was made by the official with final policy-making authority – County Manager Vithoulkas through his designee Deputy County Manager Hinton and through a grievance process established by the County by the Board of Supervisors.

**E.     Additional Facts Bearing on the Individual Defendants' Liability for the Constitutional Violation.**

108.     Each Individual Defendant was a but-for and proximate cause of the decision to terminate Plaintiff.

109.     Defendants Vithoulkas and Oughton, upon learning of Plaintiff's comments on the HCPS Facebook post, instructed Defendants Walls and LaBelle to, inter alia, interrogate Plaintiff.

110.     Defendants Walls and LaBelle interrogated Plaintiff and made recommendations to Defendants Oughton and/or Vithoulkas to terminate Plaintiff because of his comments on the HCPS Facebook post.

17

111.    Based on the recommendations from Defendants Walls and LaBelle, Defendant Oughton and/or Defendant Vithoulkas made the initial decision to terminate Plaintiff.

112.    Defendant Vithoulkas, through his designee Defendant Hinton at Step 3 of the grievance procedure, made the final decision to terminate Plaintiff because of his comments.

113.    Defendant Vithoulkas and Defendant Hinton, in upholding Plaintiff's termination at Step 3 of the grievance procedure, made the final decision to terminate Plaintiff because of his comments.

**F.    Additional Facts Bearing on the Clearly Established Nature of the Constitutional Right at Issue.**

114.    At the time of the decision to terminate Plaintiff, it was clearly established that a government employer "cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression," *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

115.    At the time of the decision to terminate Plaintiff, it was clearly established that "a public official may not misuse his [or her] power to retaliate against an individual for the exercise of a valid constitutional right," *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).

116.    When Plaintiff made his comments on the HCPS Facebook post, he was speaking as a private citizen on a matter of public concern.

117.    Plaintiff's speech was the exercise of a valid constitutional right to free speech.

118.    Plaintiffs' speech qualifies for First Amendment protection.

119.    Defendants terminated Plaintiff because of his protected speech.

120.    At the time of Plaintiff's termination, it was clearly established that terminating Plaintiff because of his First Amendment protected speech would violate Plaintiff's First Amendment Rights.

121.    At the time of Plaintiff's termination, it would be clear to a reasonable official that terminating Plaintiff because of his First Amendment protected speech would violate Plaintiff's First Amendment Rights.

**G.      Additional Facts Bearing on Plaintiff's Termination**

122.    Defendants terminated Plaintiff from his employment because of his comments on the HCPS Facebook post.

123.    Defendants had no adequate justification for policing and penalizing Plaintiff's Facebook comments.

124.    Plaintiff's comments on the HCPS Facebook post did not impede working relationships at the County or the Division of Fire.

125.    Plaintiff's comments on the HCPS Facebook post did not impede the performance of Plaintiff's duties.

126.    Plaintiff's comments on the HCPS Facebook post did not negatively affect the public perception of the County or the Division of Fire.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983—Deprivation of First Amendment Rights / Retaliation for First Amendment Protected Speech (All Defendants)**

127.    The allegations of the foregoing paragraphs are re-alleged as if set out in full.

128.   Plaintiff's comments on the HCPS Facebook post constitute speech and expression on a matter(s) of public concern that is protected by the First Amendment to the United States Constitution.

129.   Defendants terminated Plaintiff because of his comments on the HCPS Facebook post.

130.   The interests of Defendants in promoting the efficiency of services provided to the public were in no way impaired by the Plaintiff's comments on the HCPS Facebook post, and Defendants' interests in suppressing the Plaintiff's speech do not outweigh Plaintiff's interests.

131.   The actions of Defendants in terminating the Plaintiff's employment were undertaken under color of state law because they were done pursuant to and in enforcement of a policy, custom, or rule implemented by Defendants, were done willfully, in joint action with the other Defendants, were done pursuant to a conspiracy between each of the Defendants, were done in connection with the performance of a public function, and/or because Defendants were closely involved in the decision to terminate Plaintiff because of his comments on the HCPS Facebook post.

132.   Plaintiff was deprived of his rights under the First Amendment to the United States Constitution when he was terminated from his employment because of his comments on the HCPS Facebook post.

133.   Defendants Oughton, Labelle, Walls, Hinton, and Vithoulkas caused the deprivation of the Plaintiff's First Amendment rights by ordering, demanding, and/or suggesting that Plaintiff be terminated because of his comments on the HCPS Facebook post.

20

134.    The deprivation of the Plaintiff's First Amendment rights was caused by a policy, custom, or practice of the County of Henrico and/or by the decision of a person who has final policymaking authority for the County on matters relating to personnel.

135.    Defendants are jointly and severally liable for the deprivation of Plaintiff's First Amendment rights.

136.    Plaintiff is entitled to relief for the harm caused by this deprivation of his First Amendment rights under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants, jointly and severally, as follows:

A.      That judgment be entered finding in favor of Plaintiff on each of the claims set forth above;

B.      That the Court grant an injunction requiring Defendants to rehire and reemploy the Plaintiff on terms equal to those under which the Plaintiff was employed on June 10, 2020, and forbid the discharge of the Plaintiff for his comments on the HCPS Facebook post;

C.      That Plaintiff be awarded lost wages and compensatory damages in amounts to be shown at trial for back pay, front pay, the value of all employee benefits lost as a result of his termination from employment with County of Henrico, and for the pain, suffering, emotional distress, and other damages caused by the Defendants' actions, and for punitive damages to the extent allowed by law;

D.      That Plaintiff be awarded his attorney fees pursuant to 42 U.S.C § 1988, together with costs of this litigation, including expert fees; and

E.     That this Court order any and all such other and further relief as it may deem proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

Dated:   January 19, 2021

Respectfully submitted,

/s/Timothy Coffield
Timothy Coffield (VSB # 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
(434) 218-3133
tc@coffieldlaw.com
Counsel for Plaintiff
Participating Attorney for
THE RUTHERFORD INSTITUTE

**CERTIFICATE**

I HEREBY CERTIFY that if service is not waived a true and correct copy of the foregoing Complaint will be delivered to a qualified process server with instructions to serve the same upon the Defendants or their authorized agents at the addresses provided on the proposed summonses filed with the Court, or any other addresses where Defendants may be found.

/s/Timothy Coffield
Counsel for Plaintiff